## MERCHANTS' FIRE INSURANCE COMPANY v. McADAMS.

### Opinion delivered December 21, 1908.

1. INSURANCE—CONCURRENT INSURANCE—WAIVER OF FORFEITURE.—Where insured solicited fire insurance from a certain company which accepted the application but divided the risk with two other companies, which issued policies covering their *pro rata* of the risk, and thereafter insured mailed the three policies to the first company with request that the three policies be cancelled, and subsequently took out two policies in other companies, notifying the latter's agent at the time the policies were issued of the facts concerning the alleged surrender of the policies, the latter companies will be held to have waived any forfeiture on account of the prior insurance policies, whether they were ever cancelled or not. (Page 555.)

2. TRIAL—DIRECTING VERDICT.—It is error to direct the jury to find according to the testimony of a witness if he is interested in the result of the trial, or is contradicted by other witnesses, or if his testimony contains such inconsistencies or inaccuracies as would have warranted the jury in declining to accept as established the existence of facts which depended entirely on his testimony. (Page 555.)

3. INSTRUCTIONS—CONFLICT.—It is prejudicial error to give conflicting instructions if it is impossible for the court to say which the jury followed in making up their verdict. (Page 556.)

4. INSURANCE—SURRENDER OF POLICIES.—Where there was a conflict in the testimony as to whether an insurance company was authorized to cancel insurance policies issued by two other companies, it was error to

instruct the jury that mailing the two latter policies to the former company constituted a surrender of such policies.  (Page 556.)

5. SAME—ALLOWANCE OF ATTORNEY'S FEE.—Acts 1905, c. 115, providing that where an insurance company fails to pay a loss within the time specified in the policy it shall be liable "for reasonable attorneys' fees for the prosecution and collection of such loss," contemplates that the company shall pay a reasonable fee, but not a speculative or contingent fee based upon the uncertainty of the result of the litigation.  (Page 556.)

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed.

*J. W. & M. House,* for appellants.

1.  By the terms of the application and the policy sued on the answers to the questions in the application were made warranties; and it is expressly stipulated in the policy that it should become void if the insured at the time had, or should thereafter procure, any other insurance, whether valid or not, on the property covered in whole or in part by this policy.  If appellee's testimony that he mailed the policies of the other insurance companies be true, and if it be conceded that he thought they had been cancelled, his case is not strengthened.  Though an assured may honestly believe what he said to be true, still, if such statement is made the basis of a warranty, and it be in fact not true, the insurance is vitiated.  14 N. W. 792; 5 Fed. 674; 12 Am. St. Rep. 807-8; 31 S. W. 566; 98 Pa. 45.

2.  It is obvious from the application made to the Queen of Arkansas Insurance Company that appellee understood that that company was not expected to take the entire amount of the application.  When the application was given to that company, and it sought insurance in other companies, it was a mere broker acting for him, which agency ceased when the policies were issued by the other companies and were returned to and accepted by appellee.  These policies were issued subject to appellee's approval, and when they were received and retained by him without objection they were approved, and thereafter the Queen of Arkansas company had nothing further to do with, nor any control over, them.  1 S. W. 689; 83 Md. 22; 36 Mich. 502; 63 N. W. 784; 1 Cooley's Briefs on Ins. 68; 105 Ala. 282.

3.  The policies of the Capital and American Fire Insurance companies both provided the manner in which they should be cancelled.  When a contract provides how it may be cancelled,

its terms must be pursued, or there can be no cancellation, and the court's instruction to the effect that if appellee mailed the policies to the Queen of Arkansas Insurance Company this was a cancellation of the policies, is contrary to this court's declaration of the law. 72 Ark. 305.

4. The second and fourth instructions given by the court are both peremptory instructions to find for the plaintiff, and are erroneous.

*C. P. Harnwell,* for appellee.

McCULLOCH, J. Appellee, McAdams, instituted separate actions against appellants, Merchants' Fire Insurance Company and Planters' Fire Insurance Company, to recover the amount of the several insurance policies, each for $1,000, issued to him by said respective companies on his frame store building, stock of merchandise and store furniture and fixtures. The court made an order consolidating the two actions as involving the same issues, and a trial resulted in a judgment in appellee's favor against each company for the full amount of its policy and for damages and attorney's fees under the statute. The insurance companies appealed.

The defenses offered by each appellant were that there were breaches by appellee of his warranty contained in the "iron safe clause" of the policy with reference to the preceding itemized inventory and the keeping of books, and of his warranty concerning other insurance on the property. The facts upon which the latter defense is based are as follows: In June, 1906, he applied to the Queen of Arkansas Company for insurance in the sum of $2,500 on this property, and paid a part of the premium and executed his note to that company for the balance, which note he afterwards paid. That company accepted and approved the application, but, not desiring to carry insurance in that amount on the property, issued to appellee a policy for $900, but procured for him on the application two policies each for $800 from the Capital Fire Insurance Company and the Peoples' Fire Insurance Company, thus making the total amount of insurance asked for in the application. All of the policies were for one year, expiring on June 21, 1907, and the Queen of Arkansas Company accounted to the other two companies for the premiums. The People's Fire Insurance Company afterwards passed into the

hands of a receiver, and the American Insurance Company issued a policy in lieu of the one issued by the People's Company.

In March, 1907, the managing officers of the Queen of Arkansas Company decided to cancel its policy, and sent its agent to see appellee to demand the surrender of the policy, but appellee refused to do so except on condition that all of the premium be returned. On March 28, 1907, that company sent appellee a check for the unearned premium on its policy and again demanded a surrender of the policy, and on the day appellee received the check he mailed to the Queen of Arkansas Company, postage prepaid, all three of said policies with a letter stating that he surrendered same. The envelope containing this letter and the policies was never received by the company, and this warrants the conclusion from the evidence that it was lost in the mail. The officers of the other two companies testified that they never received the policies nor cancelled them, but considered them in force until the date of expiration on June 21, 1907.

The two policies in suit were both issued to appellee on April 2, 1907, and the fire occurred on June 27, 1907. They were issued on appellee's application made to the Planters' Fire Insurance Company through one of its solicitors.

Appellee testified that when he made application to the soliciting agent he informed the latter that he had returned all the policies for cancellation, and had no insurance on the property, and that he showed him the letter received from the Queen of Arkansas Company concerning the cancellation.

The written application upon which the policies were issued contained the following among other questions and answers, the truth of which answers are by the express terms of the policies, warranted:

"Q. What other insurance on property? (Give companies and amounts.) Answer. No. * * * * * *

"Q. Has any company cancelled or refused insurance on the property? Answer. Insured in the People's when it made assignment."

Each of the policies sued on contained the following clause

"This entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, shall be void if the insured now has or shall hereafter make and procure any other contract

of insurance, whether valid or not, on property covered in whole or in part by this policy.",

The court, over the objections of appellant, gave the following instruction, viz:

"2. The court now instructs you that if you find from the evidence the plaintiff, L. C. McAdams, made application to the Planters' Insurance Company for indemnity against loss by fire upon a stock of merchandise, store fixtures and store building at Bryant, Arkansas, for $2,000 and the said Planters' Insurance Company accepted his application and issued its policy for $1,000 thereof and placed the other $1,000 in the Merchants' Fire Insurance Company, and the said Merchants' Fire Insurance Company accepted the risk and issued and delivered its policy to the Planters' Fire Insurance Company for delivery to and collection of the premium from the assured and plaintiff, L. C. McAdams, and that said L. C. McAdams accepted such policy and paid the premium therein stipulated, and that subsequently the property insured was totally destroyed by fire, and said L. C. McAdams made and delivered proofs of loss to said companies as in the policies provided, and that he suffered loss in the sum set forth in the proofs, you will find for the plaintiff.

"4. The court further instructs you that under section 4375 of chapter 90 of Kirby's Digest, 1904, a fire insurance policy in case of total loss by fire of the property insured is a liquidated demand against the company for the amount upon which it charged, collected, and received a premium, except as to personal property, and, therefore, if you find from the evidence the frame store building thereby insured for $300 was totally destroyed you will find for plaintiff on said item in the sum of $300, and if you find the sound value of the merchandise destroyed was $2,124.15 and of the store fixtures $270, you will apply the three-fourths loss clause to the items to determine the companies' liability, but which under the policies can not exceed $1,500 on the item of merchandise and $200 on the item of store fixtures.

"8. The court further instructs you that if you find from the evidence that the assured, L. C. McAdams, before applying for the policy of defendants herein, inclosed the policies of the Capital Fire Insurance Company, the Peoples' Fire Insurance Company and the American Fire Insurance Company sealed in

an envelope addressed to the Queen of Arkansas Insurance Company at Little Rock, Ark., and deposited the same in the post-office at Bryant, Arkansas, postage prepaid, that in fact constituted and was a surrender of the policies to the companies issuing same, and was in fact a cancellation, and the policies thenceforth ceased to be in force and effect, even though the said Queen of Arkansas Insurance Company did nothing with them."

The second and fourth instructions copied above were, in effect, peremptory ones in favor of appellee, as the facts there recited were undisputed, and they ought not to have been given. They entirely ignored the defenses offered by appellants.

If, as contended by appellee, he informed the agent who, by authority from the companies, solicited and procured the application for insurance, of all the facts concerning the alleged surrender of the policies, and the companies accepted the application and issued the policies sued on with full knowledge on the part of their agent of said facts, it operated as a waiver, and the companies are liable, notwithstanding the fact that the policies were never, in fact, received by the other companies and cancelled. *German-American Ins. Co.* v. *Harper,* 75 Ark. 98; *People's Fire Ins. Assoc.* v. *Goyne,* 79 Ark. 315; *Mutual Reserve Fund Life Assoc.* v. *Cotter,* 81 Ark. 205.

But it can not be said to be an undisputed fact in the case that appellee did so inform the agent. It is true that appellee testified that he so informed the agent, and Hooper, the agent, was not called as a witness to deny it, but appellee was the only witness who testified to that fact, and his testimony does not establish it so that the court and jury were bound to accept it as an undisputed fact. He was not only vitally interested in the result of the trial, but his testimony was on some points in conflict with other testimony, and the jury had the right to discard his statements. He testified that his son mailed all the policies to the Queen of Arkansas Company, but it is shown that they never in fact reached that company, and the jury could have believed, either that they were lost in the mail or that they were never posted in the mail as appellee claims. There were also other inconsistencies and inaccuracies in his testimony which would have warranted the jury in declining to accept as established the existence of facts which depended entirely on his testimony.

Judge RIDDICK, speaking for the court in *Skillern* v. *Baker,* 82 Ark. 86, said: "It may be said to be the general rule that where an unimpeached witness testifies distinctly and positively to a fact and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to by the witness can be drawn, the fact may be taken as established, and a verdict may be directed based on such evidence. But this rule is subject to many exceptions, and where the witness is interested in the result of the suit, or facts are shown that might bias his testimony or from which an inference may be drawn unfavorable to his testimony or against the fact testified to by him, then the case should go to the jury." Citing cases.

There were other instructions given by the court which submitted to the jury the question whether or not there was a breach of the warranty with respect to other insurance, but they were necessarily in conflict with the two we have just commented on, and it is impossible for the court to say which the jury followed in making up their verdict. *Murch Bros. Construction Co.* v. *Hayes, ante* p. 292; *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 224.

The eighth instruction copied above was erroneous in telling the jury, in substance, that the mailing to the Queen of Arkansas Insurance Company of the two policies issued by the other two companies constituted a surrender and cancellation of those policies. If it be conceded that there was some evidence tending to establish the fact that, according to the customary course of dealing between the several insurance companies, the Queen of Arkansas Company was authorized to cancel policies for the other companies, or to accept for them the surrender of policies, there is certainly evidence tending to show that the Queen of Arkansas Company had no such authority to act for the other companies, and the question should have gone to the jury. It was error to place it before the jury as an undisputed fact that the Queen of Arkansas Company possessed such authority, and to tell the jury as a matter of law that the mailing to that company of the policies constituted a surrender and cancellation.

There are other assignments of error which we need not pass upon, as the errors indicated call for a reversal.

In view, however, of another trial we will call attention to

an error of the court in fixing the amount of attorney's fee to be taxed against the insurance company based on evidence as to what would be a reasonable contingent fee. The statute provides that a reasonable attorney's fee for the prosecution of the suit and collection of the amount of the loss under the policy shall be taxed against the company. This means such a fee as would be reasonable for a litigant to pay his attorney for prosecuting the case, and not a speculative or contingent fee based upon the uncertainty of the result of the litigation.

Reversed and remanded for new trial.