EBBERT *v.* HUBBELL METALS, INC.

5-2208                                                       341 S. W. 2d 768

Opinion delivered January 9, 1961.

*Howard & McDaniel,* for appellant.

*Marcus Fietz* and *James B. Roleson,* for appellee.

ED. F. McFADDIN, Associate Justice. The judgment in this action on account must be reversed because of an erroneous ruling in regard to the admission of evidence.

Appellee, Hubbell Metals, Inc., filed action against Appellant Bill Ebbert for $458.82 and interest alleged to be due on an open account for merchandise. The defense, *inter alia,* was that appellant neither ordered nor received the merchandise for his own use. Trial to a jury resulted in a judgment for appellee for the full amount; and appellant brings this appeal, urging two points, the first of which is:

"The Court erred in the admission in evidence of plaintiff's Exhibit No. 1 because said exhibit was a photostatic copy and it was not admissible under the best evidence rule and the governing statute."

We find it unnecessary to consider the second point urged by the appellant because the first point requires a reversal of the judgment rendered. Hubbell Metals shipped the merchandise to Arkansas Aluminum Awning Company via Superior Forwarding Company, a motor carrier. Ebbert's defense was, that even though he was the owner of Arkansas Aluminum Awning Company, nevertheless he had previously informed the salesman of Hubbell Metals that W. A. Kernodle was operating the Arkansas Aluminum Awning Company and that Ebbert would not be liable for any merchandise sold to the Company while Kernodle was operating the business. In the course of the trial, and to show delivery of the merchandise to appellant, appellee offered what pur-

ported to be a photostatic copy of a bill of lading issued by Superior Forwarding Company and claimed to contain the signature of appellant as having received the shipment. The Court permitted the photostat* to be introduced in evidence, and that ruling is the point at issue.

Ebbert insisted that the photostat was a mere copy and not the best evidence, and that no foundation was laid for the admission of the copy. The best evidence rule, as applied to the situation here, is stated in 20 Am. Jur. 379, "Evidence", § 426:

"The original of a writing, document, or record, is the primary evidence of the matter contained in such writing, document, or record. Copies are mere secondary evidence, and, under the general rule requiring the production of the best evidence which the nature of the case admits, are not admissible in evidence over the objection of the adverse party unless a basis is laid for their reception by showing that the original cannot be produced."

In *Union Central Life Ins. Co.* v. *Mendenhall*, 183 Ark. 25, 34 S. W. 2d 1078, there was an effort made to introduce a photostatic copy of a premium card and, in holding the copy to be inadmissible, this Court said:

"The original premium card was the best evidence, and there was no proper foundation laid for the introduction of a copy. . . . The court correctly held the photostatic copy inadmissible. That it was a photograph and less liable to imperfectly depict the original than a copy transcribed ordinarily would, does not alter the general rule."

In the case at bar there was no testimony to show that the original bill of lading was not available to the

---

* In some current dictionaries the word "photostat" is listed only as "A trademark applied to a device. . ."; but Funk & Wagnall's New Standard Dictionary of the English Language, published in 1956, says that "photostat", as a noun, is "A positive obtained by a camera designed to reproduce documents, as deeds for record, checks, policies, drawings, etc., on bromide paper; also, the instrument itself; a protected trade name." The same dictionary says that "photostat" is also a transitive verb as well as an intransitive verb; and "photostatic" is an adjective.

plaintiff instead of a mere photographic copy;[1] and so the copy offends against the best evidence rule. But the appellee insisted in the Lower Court, and claims here, that the copy was admissible because of Act No. 64 of 1953, which makes admissible in some instances the photographic copies of business records, and it was on this theory that the Lower Court admitted the photostat in evidence. The germane portion of this Act No. 64 (§ 28-932, Ark. Stats.) reads:

"If any business . . . in the regular course of business or activity has kept or recorded any memorandum . . . of any act . . . and in the regular course of business has caused any or all of the same to be recorded . . . by any . . . photostatic . . . or other process which accurately reproduces or forms a durable medium for so reproducing the original, . . . Such reproduction, when satisfactorily identified, is as admissible in evidence as the original itself in any judicial . . . proceeding."

Even though this Act No. 64 of 1953 is Section 1 of the Uniform Act entitled: "Photographic Copies of Business and Public Records as Evidence Act" (see Uniform Laws Anno. Vol. 9-A, p. 338, printing of 1957), still there is a paucity of authorities regarding the Act.[2] But it is clear that the photostat copy is admissible only "when satisfactorily identified." There is no evidence in this case that the photostat offered in evidence was from a record kept in the regular course of business, or that the photostat was made in the regular course

---

[1] Although not involved here, we call attention to the statute on business records, which is Act No. 293 of 1949 (§ 28-928 Ark. Stats.), and which permits the introduction of any writing, ". . . made as a memorandum or record of any . . . transaction . . . if made in the regular course of business, and if it was the regular course of such business to make such memorandum . . . at the time of such Act . . ." For a study of this Act see article in Vol. 3 Ark. Law Review p. 359, and see also *U. S.* v. *Bartholomew*, 137 Fed. Supp. 700.

[2] The appellant has cited us to the case of *Toho Bussan Kaisha* v. *American President Lines*, 265 F. 2d 418; and we have found no better case than the one cited. There is a note on the Act in Ark. Law Review, Vol. 7, page 332. Those interested may also consult the following: *People* v. *Wells*, 380 Ill. 347, 44 N. E. 2d 32; 142 A.L.R. 1262; 48 Michigan Law Review p. 489 *et seq.;* and 57 Commercial Law Journal p. 83 *et seq.* (April 1952).

of business. The only witness who testified about the matter was the District Manager of appellee; and he said that the proffered exhibit was a copy of a bill of lading issued by Superior Forwarding Company:

"Q. Do you know how many copies of a bill of lading were made by Superior Forwarding when this was shipped out?

A. No, I do not know what number.

Q. Do you know where the original of this is?

A. The original, I imagine, would be at Superior Forwarding Company.

Q. Does your company have a copy?

A. Yes, sir.

Q. Where is it?

A. It would be in St. Louis, sir.

Q. Where did you obtain this?

A. Sir, I do not have a copy of that in my file. This was obtained from St. Louis."

The foregoing is the only testimony that was offered as to why the photostat should be introduced, rather than the original produced; and so we hold that there was no proper foundation made for the admission of a copy; and that under the best evidence rule or under the statute, the copy cannot be introduced until a proper foundation is made.

For the error indicated, the judgment is reversed and the cause is remanded.